UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JASON POLANCO,

Defendant.

---

16 Cr. 826 (PAE)
24 Civ. 9406 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion by defendant Jason Polanco pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. For the reasons that follow, the Court denies the motion.

**I.   Background**

    **A.   Factual Background**

The following summary captures the limited facts necessary for assessment of the issues presented. Polanco was a member of a drug crew (the "Decatur Avenue Drug Crew") that operated on Decatur Avenue in the Bronx, New York. In the summer of 2014, a series of violent disputes arose between the Decatur Avenue Drug Crew and a rival crew (the "Gatta Crew"). The Gatta Crew operated on Decatur Avenue and 197th Street, abutting the Decatur Avenue Drug Crew's drug territory. On August 31, 2024, rising tensions between the rival drug crews culminated in the shooting death of Shawn Ross, a member of the Gatta Crew. Polanco was the shooter.

When drug sales slowed due to escalating violence in the area, Polanco looked for other ways to make money. Polanco participated, with others, in a series of robberies of commercial

1

businesses in Manhattan and the Bronx. Polanco and his co-conspirators robbed, at gunpoint, employees and customers of a gym, liquor stories, a deli, and a gas station. During the gas station robbery, Polanco forced a cabdriver to the ground and discharged a gun near his head.

### B. Procedural History

#### 1. Polanco's Indictment, Trial, and Sentencing

Superseding Indictment S2 16 Cr. 826 (LTS) was filed on December 19, 2017, naming 12 defendants on 12 counts. Dkt. 142. Polanco was charged on seven counts relating to his participation in a drug conspiracy, robbery conspiracy, and the shooting murder of Ross, which was alleged to be in furtherance of the drug conspiracy. *Id.*

Trial commenced on June 17, 2019, and ended on June 26, 2019, when the jury convicted Polanco on the six counts that were tried. Dkt. 421. These included participation in a heroin, crack cocaine, and marijuana conspiracy (Count One); murder through the use of a firearm (Count Two); murder while engaged in a narcotics conspiracy (Count Three); participation in a Hobbs Act robbery conspiracy (Count Four); Hobbs Act robbery (Count Five); and the use of firearms in furtherance of a robbery and robbery conspiracy (Count Six). *Id.*

During trial, the Court denied Polanco's motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), which was directed to Counts One, Two, and Three. Dkt. 402 ("Trial Tr.") at 776–81. Tracking Polanco's main argument to the jury as to the narcotics, that motion had argued that the evidence did not establish that Polanco had been a member of the relevant narcotics conspiracy, as opposed to being a member of a separate marijuana conspiracy or a lone marijuana dealer. *See id.* And on October 16, 2019, in a written order, the Court denied Polanco's post-trial motions under Rules 29(c) and 33, again finding sufficient evidence

2

of Polanco's participation in the charged narcotics conspiracy, and that the murder of Ross had been an act of participation in that conspiracy. *See* Dkt. 437.

On June 28, 2021, the Court sentenced Polanco principally to 510 months' imprisonment. Dkt. 567 (judgment).

### 2.   Polanco's Appeal

On January 26, 2023, the Second Circuit, in a summary order, affirmed Polanco's conviction on direct appeal. *See United States v. Kemp*, No. 21-1684, 2023 WL 405763 (Jan. 26, 2023); *see also* Dkt. 612 (mandate of April 17, 2023). The Circuit rejected each of Polanco's arguments, which, as summarized by the Circuit, were that:

> (1) the evidence was insufficient to find him guilty of Counts One, Two, and Three; (2) the district court abused its discretion in admitting certain out-of-court statements as co-conspirator statements and statements against penal interest; (3) the district court abused its discretion in admitting evidence of other shootings that occurred prior to Ross's murder; (4) the district court abused its discretion in declining to sever the robbery charges . . . from the narcotics conspiracy and murder charges . . .; and (5) the sentence of 510 months' imprisonment was substantively unreasonable.

*Id.* at *1.

### 3.   Polanco's Section 2255 Motion

Polanco's § 2255 motion was filed on December 9, 2024, Dkt. 631 ("Mot."), after a series of orders extended his time to file it to December 5, 2024. Dkts. 625, 627, 629. The motion is dated December 3, 2024, but is not notarized. Dkt. 631.

The motion brings six claims for relief: that (1) there was insufficient evidence to convict Polanco of the narcotics conspiracy, and the related offenses of murder through the use of a firearm and murder while engaged in a narcotics conspiracy, Mot. at 4–30; (2) the Court denied Polanco a fair trial when it denied his motion to sever the robbery-related counts, *id.* at 31–34; (3) the Court improperly admitted evidence of acts of violence towards or by members of the

3

narcotics conspiracy leading to Ross's murder, *id.* at 35–37; (4) the Court improperly admitted non-testifying co-conspirator statements, *id.* at 38–42; (5) the Government engaged in prosecutorial misconduct, *id.* at 51–57; (6) Polanco's trial counsel was ineffective, *id.* at 43–50.

On January 20, 2025, following an order directing it to respond, Dkt. 633, the Government filed its opposition. Dkt. 634 ("G. Mem.").

## II.   Discussion

Section 2255 permits a prisoner in custody to move to vacate, set aside, or correct his sentence on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To secure relief under § 2255, the petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted). In general, a § 2255 motion is not a substitute for a direct appeal. *See Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant demonstrates "either 'cause' and actual 'prejudice' . . . or

4

that he is 'actually innocent.'" *Tavarez v. United States*, 81 F.4th 234, 239 (2d Cir. 2023) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

Polanco's motion falls far short of meeting these standards. The Court denies it in its entirety, for the full range of reasons stated in the Government's comprehensive and persuasive brief, which the Court adopts. The Court here highlights the most central bases for denial.

### A. Polanco's First Four Claims Are Barred by the Mandate Rule

The first four of Polanco's six claims are barred by the "mandate rule." It bars a petitioner from collaterally attacking a sentence under § 2255 when he has already tried and failed to attack it on the same grounds on appeal. *See Yick Man Mui*, 614 F.3d at 53; *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001). The rule also bars re-litigation under § 2255 of issues that were impliedly resolved by the appellate court's mandate. *See id.*; *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001). The mandate rule squarely precludes Polanco's challenges to (1) the sufficiency of the evidence; (2) the decision not to sever the narcotics conspiracy counts from the robbery counts; (3) the admission of evidence of acts of violence preceding the Ross murder; and (4) the admission of co-conspirator statements. These claims recycle arguments Polanco expressly made—and that were decisively rejected—by the Second Circuit. *See Kemp*, 2023 WL 405763, at *3–7.

And Polanco may not evade this rule by slightly reformulating or articulating them in different detail. *See United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) (habeas petitioner may not avoid the mandate rule by offering "a slightly altered rearticulation of a claim that was rejected on his direct appeal" (citation omitted)).[1]

---

[1] Even if this bar did not block these claims, Polanco's failure to bring them on direct appeal constituted a procedural default, and Polanco has not shown cause for failing to do so there, nor actual prejudice. *See infra* sec. II.B (prosecutorial misconduct claim is procedurally defaulted).

5

### B. Polanco's Prosecutorial Misconduct Claim is Procedurally Defaulted and Meritless

Polanco's claims of prosecutorial misconduct fault the Government for ostensibly misrepresenting the trial record in opposing Polanco's Rule 29 motion and in its closing arguments, improperly questioning cooperating witnesses, improperly referring to Polanco's "violence," and giving insufficient notice to the defense as to four exhibits. Mot. at 51–57. These claims were not pursued on appeal and thus are not barred by the mandate rule. They fail, however, for two independent reasons.

First, they are procedurally defaulted. Prosecutorial misconduct claims not raised on direct appeal are procedurally defaulted and cannot be considered on collateral review. *See, e.g., Garafola v. United States*, 909 F. Supp. 2d 313, 324 (S.D.N.Y. 2012) (prosecutorial misconduct claim barred where defendant failed to raise the claim in his direct appeal); *Parrilla v. United States*, No. 13 Cr. 360, 2021 WL 4066021, at *24 (S.D.N.Y. Sept. 7, 2021) (same); *see also United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) ("[A] defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."). As stated above, a federal court will not entertain a procedurally defaulted claim "absent a showing of a cause and prejudice to excuse the default," or a showing that the petitioner "is actually innocent of the underlying offense." *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *see also Tavarez*, 81 F.4th at 239. Polanco does not even attempt to argue that there was a "cause" for his failure to raise these claims. *See Long v. Donnelly*, 335 F. Supp. 2d 450, 464 n.10 (S.D.N.Y. 2004) ("Where a petitioner is unable to show cause, . . . the court need not consider actual prejudice."). Nor does Polanco contend he is actually innocent, let alone claim the existence of any new exculpatory evidence; rather, he claims that the proof of his guilt was not legally sufficient. A claim of legal insufficiency, however, is not equivalent to a claim of

6

actual innocence, which demands a showing of "factual innocence." *Johnson v. Bellnier*, 508 F. App'x 23, 25–26 (2d Cir. 2013) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Polanco thus cannot overcome the procedural default.

Second, these arguments fail on the merits. As to this point, the Court cannot improve upon the Government's clear, detailed, and convincing response with respect to the challenged aspects of its Rule 29 argument and jury addresses, G. Mem. at 17–20, and to Polanco's other contentions, *id.* at 21–23. The Court adds only that, based on its supervision of this case after its reassignment on March 20, 2019, *see* Dkt. 309, it was in a position to closely observe the conduct of Government counsel. The Court's firm assessment is that counsel's conduct—pretrial and at trial, before the Court and before the jury—was consummately professional. The Court finds the claim of prosecutorial misconduct frivolous.

### C. Polanco's Claims of Ineffective Assistance Fail

Polanco, finally, faults his trial and appellate counsel for asserted ineffectiveness. A claim of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The Sixth Amendment guarantees a criminal defendant the right to effective assistance from his attorney at all critical stages in the proceedings. *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). To prevail on such a claim, under the familiar standard set forth in *Strickland v. Washington*, a defendant so claiming must establish that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See* 466 U.S. 668, 687–88 (1984).

As to the first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess . . . strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The court starts from a "strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. That is because there are many ways to provide effective assistance, and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689–90; *see id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).

With respect to the second *Strickland* prong, a defendant must show that he was prejudiced—*i.e.*, but for counsel's errors, there was a reasonable probability that the outcome would have been different, a "probability sufficient to undermine confidence in the outcome." *Bierenbaum v. Graham*, 607 F.3d 36, 51 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). This requires the court to examine "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *United States v. Lopez*, No. 21 Civ. 2698, 2023 WL 111784, at *3 (S.D.N.Y. Jan. 5, 2023) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted)).

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255). Thus, for a petitioner filing a motion under § 2255 to obtain a hearing, "the motion must set forth specific facts supported by competent evidence, raising detailed and

8

controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Id.* at 131 (citing *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).

### 1. Trial Counsel

Measured against these standards, Polanco's various critiques of his trial counsel's performance fall well short. The Court again adopts the Government's analysis, amplifying the following discrete points.

Polanco's critiques largely contest matters of trial strategy, which, as the Government notes, G. Mem. at 23–24, are decisions to which *Strickland* affords defense counsel broad leeway. *See* 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." (citation omitted)); *United States v. Thornhill*, 34 F. Supp. 3d 334, 369 (S.D.N.Y. 2014), *aff'd*, 667 F. App'x 310 (2d Cir. 2016); *Santana v. Capra*, 284 F. Supp. 3d 525, 541 (S.D.N.Y. 2018); *United States v. Daugerdas*, 915 F. Supp. 2d 493, 495 (S.D.N.Y. 2013).

Moreover, given the manner in which this particular case unfolded, defense counsel's decision not to secure and offer additional evidence that Polanco imagines might have assisted him on the Ross murder or the narcotics conspiracy claims was particularly defensible. The Government's evidence of Polanco's commission of the murder ultimately consisted heavily of circumstantial evidence and testimony of impeachable cooperating witnesses. And Polanco's commission of the murder, in turn, was a central basis for asserting his participation in the charged narcotics conspiracy. Defense counsel had every reason to view the Government's case on these claims as problematic and potentially beatable and to view Polanco's prospects of

success at trial as better were the jury's attention trained solely on the asserted deficiencies in that case. *See Mayo*, 13 F.3d at 533 (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"); *Pena v. United States*, 192 F. Supp. 3d 483, 490 (S.D.N.Y. 2016) (such "strategic decision[s], whether wise in retrospect or not, [are] among those professional judgment calls that are 'unchallengeable' under *Strickland*"); *Baran v. United States*, 160 F. Supp. 3d 591, 598 (S.D.N.Y. 2016) (same); *United States v. Daugerdas*, 915 F. Supp. 2d 493, 497 (S.D.N.Y. 2013) (same).[2]

Polanco also faults his trial counsel for not objecting to prosecutorial misconduct. *See* Mot. at 45–46. That critique fails because, as reviewed above, there is no basis on which to find such misconduct.

Polanco also claims that his trial counsel should have opposed the admission of his state court conviction. *See* Mot. at 54. In fact, the parties litigated that issue prior to trial, and the Court, properly, admitted it, subject to a limiting instruction. *See* Dkt. 368; Trial Tr. at 513–21.

Polanco also second-guesses the manner in which his counsel examined the three cooperating witnesses—Christopher Correa, Joseph Thristino, and Joshua Kemp. But this area of performance, too, merits broad deference under *Strickland*. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." (cleaned up)); *United States v. Guerrero*, 882 F. Supp. 2d 463, 490 (S.D.N.Y. 2011), *aff'd*, 813 F.3d 462 (2d Cir. 2016) ("[Defendant's] argument regarding defense

---

[2] The Government's evidence of Polanco's commission—following of the murder of the string of Hobbs Act robberies—was, in contrast, overwhelming. The evidence Polanco conjures does not meaningfully relate to, and would not have had any prospect of disturbing the jury's guilty verdict on, the robbery charges.

counsel's cross-examination of Government witnesses, an area that is within trial counsel's strategic discretion, fails to meet the requirements of the first prong of the *Strickland* test, as [defendant] has not established that defense counsel's failure to cross-examine the Government's witnesses concerning the discrepancies [defendant] has identified was objectively unreasonable."); *Rodriguez v. Uhler*, No. 15 Civ. 5075, 2017 WL 354180, at *9 (S.D.N.Y. Jan. 24, 2017) ("While [counsel's cross-examination] strategies may not have carried the day, lack of success does not warrant judicial second-guessing."). And Polanco is wrong to paint these examinations as deficient. Particularly relevant, the trial transcript reflects that defense counsel energetically cross-examined Correa, whereas Thristino's and Kemp's testimony largely concerned the later robbery conspiracy, as to which the evidence of Polanco's guilt was overwhelming. Correa's testimony largely served to implicate Polanco in the narcotics conspiracy. Counsel's cross examination of Correa, *see* Trial Tr. at 194–246, centrally aimed to support the defense theory that Polanco was an outsider, a marijuana seller who was not a member of the charged narcotics conspiracy centered on heroin sales. It thus sought to contextualize heroin dealer Correa's testimony that he had referred marijuana customers to Polanco. *See id.* at 197–205, 209–17.

Moreover, contrary to Polanco's portrait of the Correa cross-examination as lacking such features, it began with solid attempts to impeach Correa based on his prior lies under oath and his criminal record. *See id.* at 194–97. It later returned to these subjects, *see id.* at 205–08, 233–36, and developed Correa's proffers with the Government and his long and serious criminal history, with the intended takeaways being that he was not creditable and that his testimony pursuant to his cooperation agreement should not be trusted. *See id.* at 208–31, 245–46. Contrary to Polanco's assertions, counsel also challenged Correa on his claim to have seen the Ross murder,

11

eliciting that he was at a distance from the shooter, had a brief and compromised vantage point, and had told the Government the shooter was wearing black whereas the shooter in fact was wearing white. *See id.* at 237–45. Viewed in totality, counsel's examination of Correa was solid and impactful. It was far from ineffective.

Polanco also argues that his counsel should have called and questioned Rene Ruiz and Wilfredo Gonzalez, members of the charged heroin conspiracy. He posits that counsel could have challenged Correa's testimony that Polanco needed the heroin gang's permission to sell marijuana on the block. But both Ruiz and Gonzalez were unavailable to testify, having stated that, if called, they would have invoked their Fifth Amendment rights against self-incrimination. Dkt. 368 at 26–28. And, as the Government proffers, other aspects of their anticipatable trial testimony stood to inculpate Polanco or presented as perjurious. Counsels' decision not to call these witnesses was well within their professional judgment. *See, e.g., Ramirez v. United States*, 898 F. Supp. 2d 659, 666 (S.D.N.Y. 2012) ("[D]ecisions on which witnesses, if any, to call at trial" are "strategic in nature," and thus "cannot form the basis of an ineffectiveness claim" (citing *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987))); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."); *Walters v. United States*, No. 15 Cr. 644, 2022 WL 890906, at *3 (S.D.N.Y. Mar. 25, 2022) (same).[3]

Polanco also claims that his counsel refused to permit him to testify. Mot. at 54. That is demonstrably untrue. At trial, the Court carefully allocuted both Polanco's lawyers and Polanco on this point. Polanco's counsel stated: "We discussed in depth his rights and discussed the pros

---

[3] For the reasons the Government notes, G. Mem. at 26–27, the apparent affidavit of Ruiz attached to Polanco's motion does not change the analysis. These reasons include that there is no basis to believe that Ruiz, as of trial, had conveyed his availability to testify to defense counsel.

12

and cons legally that he could consider . . . Then this afternoon, . . . we went over again those rights, and he advised us of his decision. . . . It is a decision not to testify." Trial Tr. at 719–20. Asked whether she was confident that Polanco "understands that the decision is his, not his lawyer's but his, whether or not to testify," Polanco's counsel affirmed that she was confident, that they had reviewed the point multiple times, and that she was "certain he understands this." *Id.* at 720–21. The Court then addressed Polanco directly, confirming that he understood his rights, had had time to discuss the issue with his attorneys, and had discussed the issue for some time. *See id.* at 721–22. Asked for his decision, Polanco answered: "I will not be testifying." *Id.* at 722. Asked if this was a voluntary decision, Polanco answered: "Yes." *Id.* Given this unequivocal record, Polanco's attempt to claim ineffective assistance on this ground is unsustainable. *See Jackson v. Bennett*, No. 1 Civ. 8971, 2002 WL 1770781, at *6 (S.D.N.Y. July 31, 2002) ("[Defendant's] attorney clearly explained the reasons for and against testifying to him and, in an excess of caution, sought an on-the-record colloquy with the judge. [Defendant] then chose not to testify, citing his attorney's advice as the principal reason. This pattern of events in no way reflects deficient counsel and does not satisfy the first element of the *Strickland* test."); *Hales v. United States*, No. 8 Civ. 6547, 2010 WL 3156042, at *5 (S.D.N.Y. Aug. 9, 2010) (similar); *Williams v. United States*, 707 F. Supp. 3d 251 (W.D.N.Y. 2023) (denying ineffective assistance claim on this ground where the record was "unequivocal" that the petitioner had been advised of his right to testify and waived it).

Polanco, finally, claims that his counsel should have objected at sentencing when the Court imposed a consecutive sentence on the murder through the use of a firearm count, brought under 18 U.S.C. § 924(j). *See* Mot. at 47. But it was not until 2023 that the Supreme Court clarified, in *Lora v. United States*, that a sentence on a § 924(j) count can run either

13

consecutively or concurrently to another sentence. 599 U.S. 453, 464 (2023). And an "attorney is not required to forecast changes or advances in the law to provide effective assistance." *Tellado v. United States*, 745 F.3d 48, 55 (2d Cir. 2014) (citation omitted). In any event, there is no prejudice from this lapse, because the Court at sentencing imposed a sentence above the sum of the mandatory minimum and consecutive sentences (35 years), finding the 18 U.S.C. § 3553(a) factors instead to require a sentence of 42.5 years (510 months), in addition to the time Polanco had previously served in state custody. *See* Dkt. 584 ("Sent. Tr.") at 76–78. The sentencing record leaves no doubt that the aggregate sentence would have been the same had the Court chosen not to run the § 924(j) sentence consecutively, *i.e.*, the Court would have imposed that aggregate sentence by a different combination of sentences on particular counts. *See United States v. Vergara*, 61 F. App'x 747, 749–50 (2d Cir. 2003) ("Because we find that defendant has not demonstrated a reasonable probability that but for counsel's failure to object . . . his sentence would have been different, defendant has failed to establish that he suffered prejudice from the alleged deficient conduct of counsel, and his ineffective assistance of counsel claim must fail."); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (same); *Garrio v. United States*, No. 21 Cr. 419, 2024 WL 5238870, at *3 (S.D.N.Y. Dec. 27, 2024) (same).

### 2. Appellate Counsel

Polanco's critique of his appellate counsel is for failure to raise the prosecutorial misconduct claims on appeal. That argument fails because, as reviewed above, there was no viable such claim to bring. *See United States v. Davis*, 122 F.4th 71, 76 (2d Cir. 2024) ("[I]t is well settled that failure to make a meritless argument does not amount to ineffective assistance." (citing *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008))).

### 3. Prejudice

Polanco's ineffective assistance claims separately fail for an inability to demonstrate prejudice. The evidence of Polanco's guilt on the robbery counts—essentially of the criminal conduct to which Polanco had turned after the murder of Ross made narcotics trafficking around Decatur Avenue too hard to continue—was overwhelming. And the evidence on the narcotics and murder counts was varied and powerful, for the reasons the Government chronicles. G. Mem. at 30–31. The Court's firm assessment, having presided over the trial, is that even if there had been merit to Polanco's claims that his counsel should have taken a different approach at trial—and there is not—the jury's verdict would have been the same.

## CONCLUSION

For the reasons above, the Court denies Polanco's motion as meritless. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 631 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: February 20, 2025
New York, New York